```
 1                  IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF MARYLAND
 2                            NORTHERN DIVISION

 3


 4
       UNITED STATES OF AMERICA
 5
              v.                              CRIMINAL CASE NO.
 6                                              JFM-10-0322
       KEVIN HENTLY,
 7
              Defendant
 8     _____/

 9

10                          (Sentencing)
                        Tuesday, May 29, 2012
11                       Baltimore, Maryland

12
       Before:  Honorable J. Frederick Motz, Judge
13


14

15     Appearances:

16            On Behalf of the Government:
                John W. Sippel, Jr., Esquire
17

18            On Behalf of the Defendant:
                Alan R.L. Bussard, Esquire
19


20


21

22     Reported by:
       Mary M. Zajac, RPR, FCRR
23     Room 5515, U.S. Courthouse
       101 West Lombard Street
24     Baltimore, Maryland 21201

25
```

1          (Proceedings at 9:20 a.m.)

2          MR. SIPPEL:  This is the case of United States versus
3 Kevin Hently.  It's Criminal Number JFM-10-0322.  John Sippel on
4 behalf of the United States, Your Honor.  The matter's before you
5 for sentencing.

6          THE COURT:  Thank you.  Has everybody had a chance to
7 review the Presentence Report?

8          MR. BUSSARD:  Yes, we have, Your Honor.

9          MR. SIPPEL:  We have, Your Honor.

10         THE COURT:  Have you been over it with your client, Mr.
11 Bussard?

12         MR. BUSSARD:  I have.

13         THE COURT:  Are there any factual additions or
14 corrections to be made?

15         MR. BUSSARD:  The objections that I noted in the
16 sentencing memoranda concerning the criminal history is really
17 the only issue that we have here today.

18         THE COURT:  And I, of course, have reviewed all the
19 materials, including the submission of the letters that were
20 submitted this morning.

21         Mr. Bussard, let me hear your position first, and I'll
22 hear from Mr. Sippel.  You all can be seated.

23         MR. BUSSARD:  Your Honor, may I ask that we approach
24 the bench?

25         THE COURT:  Of course.

1         MR. BUSSARD:  Briefly.

2         (Sealed bench conference was held.)

3         THE COURT:  Mr. Bussard.

4         MR. BUSSARD:  Yes, Your Honor.  Your Honor, we made

5    the, we entered into the plea agreement, which Mr. Hently clearly

6    accepts responsibility for his actions.  At the time he assumed,

7    and I think the government, they have advised the Court, assumed

8    that he was a Criminal History Category One.  When we later

9    received the presentence investigation -- this is no reflection

10   on anyone personally in the Probation Department -- but I

11   received a call from Ms. Johnson and she indicated that the

12   pre-plea was inaccurate and that, in fact, Mr. Hently's criminal

13   history was a Category Four, which, in essence, results in a

14   sentence, even if he received a guidelines sentence, of about 53

15   to 67 months higher than we anticipated when we were having

16   negotiations.

17        THE COURT:  The plea was negotiated on the theory of if

18   it was what?

19        MR. BUSSARD:  That it was 135 to, Criminal History

20   Category 1, Level 33.  135 to 168.

21        MR. SIPPEL:  And that is correct, Your Honor.  The

22   entire time that the government was engaged in plea negotiations

23   with Mr. Hently through Mr. Bussard, we were operating under the

24   assumption that that guideline range of 135 to 168 was the

25   controlling advisory guidelines range.  And, again, that was

1  based on the pre-plea criminal history report.
2          So, Your Honor, as --
3          THE COURT:  Well, I will tell you, just because I
4  frankly am a firm believer in the plea bargaining process,
5  mistakes are made.  The pretrial, Probation Department has its
6  job to do, too, which is to report accurately.  But I will
7  sentence as though it was a Criminal History Category One.
8          MR. SIPPEL:  Thank you, Your Honor.  He definitely
9  deserves to get the benefit of that doubt because that was
10 everyone's understanding.
11         THE COURT:  That's everybody's understanding.  And,
12 again, everybody did their job.  If a mistake was made --
13         MR. SIPPEL:  A mistake was made, Your Honor.  It is
14 what it is.  Thank you, Your Honor.
15         MR. BUSSARD:  Your Honor, in the sentencing memoranda,
16 I raised a couple issues.  One of them was pretrial detention.
17 And I know the Court hears this all the time.  For young men, as
18 I stated in the sentencing memoranda, Supermax is not a pleasant
19 place.  For someone who entered there at 52 years of age and
20 later, is now 54 as he sits before you, Supermax is just
21 intolerable.  And he also spent six months at CTF down in DC,
22 which is, in my opinion, is worse, from what I hear.
23         So I wanted to bring that to the Court's attention.
24         THE COURT:  Why is Supermax worse for somebody who's
25 older than for somebody who's younger?

1        MR. SIPPEL:  Well, I think it's the adjustment process,
2   and just taking out the context of having a somewhat normal life.
3   What I also put in the sentencing memoranda is an incident that
4   happened about a month ago.
5        Mr. Hently had a 10-year longstanding relationship with
6   a woman named Terry Spry.  I met Ms. Spry at the detention
7   hearing early on in this case.  Unexpectedly, Ms. Spry passed
8   away of a seizure disorder on April 25th.  And for someone like
9   Mr. Hently, who is already looking at at least ten years of being
10  incarcerated, having been out of the social setting for almost
11  two years, to have that happen yet and not be able to be
12  released.  We attempted to have --
13       THE COURT:  I understand.
14       MR. BUSSARD:  -- Mr. Hently released to go to the
15  funeral.  But we all understood the circumstances.  On short
16  notice, we just couldn't make the arrangements to present to the
17  Court.  So that is a factor.  And maybe that's a little bit
18  different from what the young men have to experience.
19       THE COURT:  I understand.
20       MR. BUSSARD:  So I just wanted to bring that to the
21  Court's attention.
22       What I wanted to talk to the Court just briefly, and
23  then I'm going to let Mr. Hently do this, this is what, in all
24  due respect to Mr. Hently, the older inmates over at Supermax do.
25  They can go, they can be a problem over there and they can tell

1   all the young people, young men over there how to run their
2   business, you know, and fight, and have unrealistic expectations,
3   or they can do something constructive.
4           I'm hoping the Court received this.  Mr. Hently
5   indicates that he forwarded a pamphlet to the Court.  It's called
6   Project Improvement, Reverse the Trend.  It's a business plan
7   that he and Mr. Hendrickson, a codefendant in this case, who are
8   both not your typical young men that we see here so often, they
9   have started a project, and I have a copy of it here, that
10  actually, they are planning to use their time productively to try
11  to stop these young men from coming back in.
12          They have seen what it's done to them.  Mr. Hently's
13  going to be the first one to tell you that, about the remorse he
14  feels, about doing all this.  He's told me over and over again
15  that, you know, he says, I don't know why I didn't stop.  I don't
16  know why I had those guns in the locker there.  These are
17  non-violent individuals.  I don't think the government has any
18  indication they were violent.
19          The presence of the guns there is just, makes no sense.
20  Mr. Hently would be the first one to tell you that.
21          But what I am emphasizing to the Court is that he is
22  going to try to use his time as best he can.  And if he can even
23  help one or two individuals, he's going to be successful.  I give
24  him a lot of credit for this.
25          I would be happy, if the Court does not have a copy of

```
 1   this, I'd be happy to --
 2            THE COURT:  I honestly, I don't remember.  But that's
 3   fine.
 4            MR. BUSSARD:  Can I hand it up to the Court?
 5            THE COURT:  That's fine.
 6            MR. BUSSARD:  Just so you can look at it just for a
 7   moment?
 8            THE COURT:  Could be I just missed it.
 9            MR. BUSSARD:  They've actually spent a lot of time and
10   a lot of effort on this.  And, hopefully, they can continue their
11   good works.
12            Respectfully, Your Honor, I'm not going to belabor this
13   point.  I'm asking the Court to consider the mandatory minimum
14   sentence of 10 years in this case, 120 months.  That does meet
15   all the criteria under 18 USC 3553(a).  It is sufficient, but not
16   greater than necessary, to accomplish the goals.  Mr. Hently will
17   be in his 60's when he is released.  I hope we do not see him --
18            THE COURT:  Watch yourself.  Don't say the next thing.
19            MR. BUSSARD:  And he understands that it is a burden on
20   him, but he's going to try to do the best he can.
21            And I would like to have him address the Court.  I know
22   he wants to address the Court briefly.  And he is going to talk
23   about this project that he and Mr. Hendrickson have.
24            THE COURT:  Mr. Hently, of course, I'd be glad to hear
25   anything you have to say before I sentence you.  You don't have
```

1   to say anything at all.  I wouldn't hold that against you.  If
2   there's anything you want to say, I'd be glad to hear from you.
3   And if you prefer to remain seated, it's whatever you prefer.
4          THE DEFENDANT:  I just want to address the Court and
5   say that I am remorseful about my actions.  And way before I was
6   arrested, I was making a conscious effort to change my ways.
7          THE COURT:  Well, let me tell you what my sentence
8   is -- excuse me.  Did I interrupt you?
9          THE DEFENDANT:  No.  I'm finished.
10         THE COURT:  I will sentence you to the custody of the
11  attorney general for a period of 120 months.  I will place you on
12  supervised release for a period of five years, subject to the
13  general conditions, plus the special condition that you
14  satisfactorily participate in a treatment program approved by the
15  probation officer relating to substance and/or alcohol abuse.  I
16  will impose a $100 special assessment required by law.  I will
17  not impose any fine because you can't afford to pay it.
18         The sentence I am imposing is the mandatory minimum
19  sentence in this case, which I find it's, I'm sentencing you
20  below the guidelines for reasons I will state in a moment.  But
21  it is clearly the sentence which I think is appropriate under
22  Section 3553.
23         You know what you did was wrong and you have to pay a
24  heavy price for it in terms of, that is appropriate, really, for
25  general deterrence.  But in terms of your background and your

1   future, which I am much more interested in looking at the future,
2   you're the kind of person who can help people far more than I
3   can.  Your program is a good one.  If you help one person, God
4   speed and God bless you.  I hope you help more than that, because
5   the more you help the better.
6         But you clearly are a mature person.  You're going to
7   come out as a mature man.  And you can help people while you're
8   incarcerated.
9         What happened while you were incarcerated was
10  unfortunate.  That is something else in terms of the person with
11  whom you had a close personal relationship.  I certainly don't
12  quarrel with the fact that you weren't released.  But the fact of
13  the matter is it had to be a particularly hard burden on you,
14  which made the time that you spent in custody a little harder for
15  you than for others.
16        As I indicated before, the first reason I'm sentencing
17  you under the guidelines is because the plea negotiations really
18  were based upon your having a Criminal History Category One.  And
19  just in terms of fairness, that's what was expected.  The
20  Probation Office did exactly the right thing in calculating your
21  criminal history category correctly, which will result in a
22  guideline range of 188 to 235.  But the plea was negotiated on
23  the basis of it being 135 to 168.
24        Frankly, it would be an extraordinary variance from the
25  guidelines to go from 188 to 120.  I would, anyway, because I

1 really think that, looking at the future, you're somebody, you're
2 mature, you're trying.  And you can help people in a way which I
3 can't possibly do.  That's what you want to have happen, what I
4 want to have happen.
5 　　　　　You obviously are somebody who is, you know, good to
6 your son, I hope.  I hope he goes the right way and learns what
7 has to be learned.
8 　　　　　But the sentence I am imposing, ten years, is the
9 mandatory minimum.  It's an appropriate sentence, but it's a long
10 sentence and, clearly, is that which is appropriate under Section
11 3553.  I also take into account all the other factors which have
12 been brought to my attention.
13 　　　　　If anybody believes I've erred, they have a right to
14 appeal.
15 　　　　　Were there counts to be dismissed?  I don't remember.
16 　　　　　MR. SIPPEL:  No, Your Honor.  Single count.  Thanks for
17 your understanding, Your Honor.
18 　　　　　THE COURT:  Good luck.
19 　　　　　(Conclusion of Proceedings at 9:35 a.m.)
20
21
22
23
24
25

REPORTER'S CERTIFICATE

I, Mary M. Zajac, do hereby certify that I recorded stenographically the proceedings in the matter of USA v. Kevin Hently, Case Number(s) JFM-10-322, on May 29, 2012.

I further certify that the foregoing pages constitute the official transcript of proceedings as transcribed by me to the within matter in a complete and accurate manner.

In Witness Whereof, I have hereunto affixed my signature this _____ day of _____, 2012.

_____
Mary M. Zajac,
Official Court Reporter